ITASCA COUNTY BOARD OF
COMMISSIONERS, et al.,
Appellants,

v.

Robert R. OLSON, Itasca County Personnel Director/Coordinator, Gene A. Hanson, Administrator of Itasca Memorial Hospital and Itasca County Personnel Policy Form 005, Respondents.

No. C2–85–262.

Court of Appeals of Minnesota.

Aug. 20, 1985.

John P. Dimich, Itasca County Atty., Michael J. Haig, Asst. County Atty., Grand Rapids, for appellants.

Steven C. Fecker, Grand Rapids, for Robert R. Olson.

David J. Koskinen, David R. Michelson, Duluth, for Gene A. Hanson.

Mark R. Anfinson, Minneapolis, for amicus curiae Minnesota Newspaper Assn.

Hubert H. Humphrey, III, Atty. Gen., Robert R. Nardi, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae Minnesota Attorney General.

Heard, considered and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

PARKER, Judge.

This declaratory judgment action was brought by appellants Itasca County Board of Commissioners (Itasca County) to determine their rights and responsibilities in connection with a proposed performance evaluation of respondent Gene Hanson, Itasca Memorial Hospital Administrator. Itasca County contends Minn.Stat. § 471.705 (1984), the Minnesota Open Meeting Law, requires that their meeting to evaluate Hanson be public. Hanson claims the evaluation should be held privately because it will involve discussion of data classified as "private personnel data" under Minn.Stat. § 13.43, subd. 4 (1984), of the Minnesota Government Data Practices Act.

The trial court found Minn.Stat. § 13.43, subd. 4, creates an exception to the Open Meeting Law subject to court review and then ruled that the meeting to evaluate Hanson should be open to the public. We reverse the trial court's decision that the Data Practices Act, Minn.Stat. § 13.43, subd. 4, creates a further exception to the Open Meeting Law.

## FACTS

The Itasca County Board of Commissioners is the governing body and employer for Itasca County, a political subdivision of the State of Minnesota. The individual appellants are the commissioners serving on the County Board. The County Board has delegated to the Itasca County Hospital Board (Hospital Board) responsibility for the care, management, and operation of Itasca Memorial Hospital, a publicly owned hospital. All of the commissioners serve on the Hospital Board.

Hanson is the hospital administrator and a supervisory employee of the County

Board. Both boards have authority to evaluate Hanson's work performance. The Hospital Board wants to evaluate Hanson's work performance based on a standard evaluation form (Form 005). Items on Form 005 include job knowledge, productivity, quality, initiative, use of time, planning, follow-up, human relations, leadership, and subordinate development.

The Hospital Board scheduled an evaluation session of Hanson at an open meeting on July 17, 1984. At that meeting Hanson asked that the meeting be closed to the public, claiming the evaluation would involve information classified as private personnel data under Minn.Stat. § 13.43, subd. 4, of the Data Practices Act. Perceiving a conflict between that statute and the Open Meeting Law as to whether the evaluation should be held at an open or closed meeting, the Hospital Board postponed its evaluation to obtain legal advice. Subsequently, Itasca County brought a declaratory judgment action to determine the parties' rights and responsibilities under the Open Meeting Law and the Data Practices Act.

The trial court found that Minn.Stat. § 13.43, subd. 4, operates as an exception to the Open Meeting Law subject to court review on a case-by-case basis. In this case, the court ruled the evaluation meeting should be open to the public.

Itasca County's motion for amended conclusions of law or, in the alternative, a new trial was denied, as was their petition for accelerated review to the Minnesota Supreme Court. It appeals from the judgment and the trial court's order denying a new trial. The Minnesota Attorney General and Minnesota Newspaper Association filed briefs as amici curiae.

## ISSUES

1. Does Minn.Stat. § 13.43, subd. 4, of the Minnesota Government Data Practices Act create an exception to Minn.Stat. § 471.705 (1984), the Minnesota Open Meeting Law, for discussions involving personnel data classified as private?

2. Does Minn.Stat. § 13.03, subd. 4, require personnel data classified as private

under Minn.Stat. § 13.43, subd. 4, of the Minnesota Government Data Practices Act to change in classification to public when that data must reasonably be discussed at a meeting of a public body which is subject to the Minnesota Open Meeting Law?

3. Does Minn.Stat. § 13.43, subd. 4, violate the first and fourteenth amendments of the United States Constitution and article 1, section 1, of the Minnesota Constitution, by precluding public discussion of private personnel data without a court order?

## DISCUSSION

### I

### *The Minnesota Open Meeting Law*

The Minnesota Open Meeting Law provides in relevant part:

> *Except as otherwise expressly provided by statute,* all meetings, including executive sessions, of any state agency, board, commission or department when required or permitted by law to transact public business in a meeting, and *the governing body of any * * * county,* city, town, or other public body, and of any committee, subcommittee, *board,* department or commission thereof, *shall be open to the public * * *.*

Minn.Stat. § 471.705, subd. 1 (1984) (emphasis added).

The Open Meeting Law has been in effect since 1957. *See* 1957 Minn.Laws ch. 773. The purposes of the statute are:

> (1) "to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences," *Lindahl v. Independent School District No. 306,* 270 Minn. 164, 167, 133 N.W.2d 23, 26 (1965); (2) "to assure the public's right to be informed," *Channel 10, Inc. v. Independent School District No. 709,* 298 Minn. 306, 313, 215 N.W.2d 814, 821 (1974); and (3) "to afford the public an opportunity to present its views to the board," *Sullivan v. Credit River Town-*

*ship,* 299 Minn. 170, 175, 217 N.W.2d 502, 506 (1974).

*St. Cloud Newspapers v. District 742 Community Schools,* 332 N.W.2d 1, 4 (Minn.1983).

 The statute was enacted for the public benefit and should be liberally construed. *Id.* at 4–5. A liberal construction includes a presumption of openness subject to "rare and carefully restrained exception." *Id.* at 5.

 Both the County and Hospital Boards are subject to the provisions of the Open Meeting Law. Accordingly, they are required to conduct their business at meetings which are open to the public unless the business to be conducted comes under an exception to the Open Meeting Law. Itasca County argues that the trial court erred by interpreting Minn.Stat. § 13.43, subd. 4, as one such exception.

### The Minnesota Government Data Practices Act

The Minnesota Legislature enacted a data privacy statute in 1974.[1] *See* 1974 Minn.Laws ch. 479. According to some commentators, the current Data Practices Act

> attempts to reconcile the rights of data subjects to protect personal information from indiscriminate disclosure with the right of the public to know what the government is doing. The Act also attempts to balance those competing rights within a context of effective government operation.

Gemberling and Weissman, *Data Privacy: Everything You Wanted to Know About the Minnesota Government Data Practices Act—From "A" to "Z",* 8 Wm.Mitchell L.Rev. 573 (1982).

The Data Practices Act presumes public access. However, some data is shielded from public view:

> All government data collected, created, received, maintained or disseminated by

a state agency, political subdivision, or statewide system shall be public unless classified by statute * * * as nonpublic or protected nonpublic, *or with respect to data on individuals, as private* or confidential.

Minn.Stat. § 13.03, subd. 1 (1984) (emphasis added).

This case involves the section of the Data Practices Act covering "personnel data," which is defined as

> data on individuals collected because the individual is or was an employee of * * * a state agency, statewide system or *political subdivision* * * *.

Minn.Stat. § 13.43, subd. 1 (1984) (emphasis added). Section 13.43, subd. 2, provides an extensive listing of personnel data on current government employees which is public. However, section 13.43, subd. 4, provides "[a]ll other personnel data is *private data on individuals, except pursuant to a valid court order*" (emphasis added).

> *"Private data on individuals"* means data which is made by statute or federal law applicable to the data: (a) *not public;* and (b) accessible to the individual subject of that data."

Minn.Stat. § 13.02, subd. 12 (1984) (emphasis added).

In this case some of the discussion at Hanson's proposed employment evaluation would include personnel data classified as "private data on individuals." Thus, Hanson claims, the entire evaluation meeting should be closed to the public.

### Statutory Interpretation

 Resolution of this case requires an interpretation of these two allegedly conflicting statutes. "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (1984). In so doing, the court has a duty to give effect to all related statutory provisions, if possible. *Roinestad v. McCarthy,*

---

**1.** The statute was given its current name and expanded in 1979. *See* 1979 Minn.Laws ch. 328,

§ 1.

249 Minn. 396, 405, 82 N.W.2d 697, 703 (1957). However, when provisions are irreconcilable, "the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail." Minn.Stat. § 645.26, subd. 1 (1984).

■ We agree with Itasca County that the general language of the Data Privacy Act is not specific enough to meet the standard set forth in the Open Meeting Law to qualify as an exception. In reaching this conclusion we note that every recognized statutory exception to the Open Meeting Law contains explicit language clearly indicating its purpose. *See* Minn. Stat. § 471.705, subd. 1 (1984) ("This section shall not apply to any state agency, board, or commission when exercising quasi-judicial functions involving disciplinary proceedings"); Minn.Stat. § 471.705, subd. 1a (1984) ("Subdivision 1 does not apply to a meeting held pursuant to the procedure in this subdivision" [labor negotiations]); and Minn.Stat. § 125.17, subd. 7 (1984) ("All hearings before the school board shall be private or may be public at the decision of the teacher against whom such charges have been filed").

In contrast, section 13.43, subd. 4, merely indicates in general terms that certain personnel data should normally be considered private. It does not expressly provide that meetings of public bodies subject to the Open Meeting Law should be closed to the public when personnel data classified as private is discussed. Moreover, the clear language of the Open Meeting Law compels rejection of Hanson's argument that such an exception should be implied in order to reconcile the two statutes. In this case the special provisions of the Open Meeting Law limiting the way in which an exception may be created prevails over the general language in the Data Privacy Act.

■ It is also clear that judicially created exceptions to the Open Meeting Law are generally not permitted. *See Channel 10, Inc.,* 298 Minn. 306, 215 N.W.2d 814 (Minnesota Supreme Court reversed a trial court decision that would have created several such exceptions). However, Hanson contends the Minnesota Supreme Court has recognized exceptions to the Open Meeting Law not specifically expressed by the legislature. He points to *Minneapolis Star & Tribune v. Housing & Redevelopment Authority for Minneapolis,* 310 Minn. 313, 251 N.W.2d 620 (1976) (*HRA* ), in which the court recognized an attorney-client privilege exception to the Open Meeting Law despite the absence of a statute expressly authorizing the exception.

■ *HRA* is distinguishable from the case at bar, however, because the exception it recognized is compelled by the Minnesota Constitution. The Minnesota Supreme Court is empowered by article 3, section 1, of the Minnesota Constitution to regulate the practice of law.[2] *See HRA* at 318, 251 N.W.2d at 623; *In re Petition for Integration of Bar of Minnesota,* 216 Minn. 195, 12 N.W.2d 515 (1943). The supreme court has the exclusive power to make the necessary rules and regulations governing the bar, free from the dangers of encroachment either by the legislative or executive branches. *In re Petition for Integration* at 199, 12 N.W.2d at 518. Thus, the right of the judiciary to determine the scope of the attorney-client privilege is not subject to legislative enactment.

Having established its authority, the court then found the attorney-client privilege operates as an exception to the Open Meeting Law when confidential communications are necessary in conjunction with "threatened or pending litigation." *HRA* at 323–324, 251 N.W.2d at 625–626. How-

---

**2.** This section provides:

The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

ever, the court strictly limited the attorney-client exception and stated in addition:

> We cannot emphasize too strongly that should this exception be applied as a barrier against public access to public affairs, it will not be tolerated, for this court has consistently emphasized that respect for and adherence to the First Amendment is absolutely essential to the continuation of our democratic form of government. It will be upheld, however, if the balancing of these conflicting public policies dictates the need for absolute confidentiality.

*Id.* at 324, 251 N.W.2d at 626.

Unlike the attorney-client privilege, the exception we are asked to recognize involves an area within the inherent authority of the legislature, not the judiciary. The legislature has restricted the manner in which an exception to the Open Meeting Law can be created in order to further its important public purposes. We hold the exception found by the trial court and urged by Hanson is simply not specific enough to meet the legislative standard.

## II

Minn.Stat. § 13.03, subd. 4 (1984), states in pertinent part:

> The classification of data in the possession of an agency shall change if it is required to do so to comply with either judicial or administrative rules pertaining to the conduct of legal actions *or with a specific statute applicable to the data* in the possession of the disseminating or receiving agency.

*Id.* (emphasis added).

■ We agree with Itasca County that although personnel data deemed private by the Data Practices Act should remain private under most circumstances, section 13.-03, subd. 4, requires that classification to change to public when it is reasonably necessary for a public body subject to the Open Meeting Law to discuss the data.

This interpretation harmonizes section 13.43, subd. 4, with the Open Meeting Law and gives effect to the primary purposes of

each. The need for discussion of private personnel data will generally arise only with regard to managerial or supervisory employees because their performance is of particular significance to the public. The public has an obvious and important interest in obtaining a full disclosure of information relevant to the job performance of its high-level public employees. Those who accept such positions know they become public figures and must have lower expectations of privacy regarding data relevant to their performance. On the other hand, the privacy of ministerial employees will generally not be disturbed because of the Open Meeting Law.

This interpretation also facilitates the effective operation of government by avoiding the need to obtain a court order every time a public body seeks to evaluate a public employee's job performance in public. However, just as the supreme court expressed concern in *HRA* about the attorney-client privilege being asserted as a shield against public scrutiny, so we cannot emphasize too strongly that the Open Meeting Law should not be extended in application to destroy the integrity of the Data Practices Act as it concerns all levels of public employees in their personnel matters.

## III

■ Itasca County argues that section 13.43, subd. 4, violates the first and fourteenth amendments of the United States Constitution and article 1, section 1, of the Minnesota Constitution to the extent it precludes discussion of work evaluation data concerning county employees at meetings subject to the Open Meeting Law. This court will consider the constitutionality of a statute only if it is absolutely necessary to determine the merits. *See, e.g., State v. Hoyt,* 304 N.W.2d 884 (Minn.1981). Because we have decided this case by statutory construction, it is unnecessary for us to reach the constitutional issues.

## DECISION

Minn.Stat. § 13.43, subd. 4, of the Data Practices Act does not create an exception

to Minn.Stat. § 471.705, the Open Meeting Law. Minn.Stat. 13.03, subd. 4, requires personnel data classified by Minn.Stat. § 13.43, subd. 4, as private to change in classification to public when that data must reasonably be discussed at a meeting of a public body which is subject to the Open Meeting Law.

Reversed.